IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-01023-WDM-KLM

DAVID J. STERLING,

      Applicant,

v.

ROBERT A. HOOD, and
U.S. PAROLE COMMISSION.

      Respondents.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

Before the Court is an Application for Writ of Habeas Corpus Pursuant to 28 U.S.C.

§ 2241 [Docket No. 2, Filed May 19, 2004] filed by David J. Sterling ("Applicant").

Respondents filed a Response to Order to Show Cause Objecting to Application for Writ

of Habeas Corpus [Docket No. 15, Filed August 10, 2004].  Applicant filed a Memorandum

of Law, Traverse and Reply [Docket No. 43, Filed December 3, 2004].  Applicant also filed

a Request to Supplement Petition and Memorandum of Law and Traverse [Docket 44,

Filed March 8, 2005], but this was not ruled upon and has not been referred to this Court.[1]

_____

[1] Out of an abundance of fairness, the Court considered the supplemental
information in Plaintiff's May 8, 2005 request and determined that it does not impact the
Court's Recommendation regarding his availability for relief.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1.C, this matter has been referred to this Court for recommendation.  For reasons set forth below, the Court recommends that the Application be **denied**.

I.      Background

Applicant was convicted by plea in the United States District Court for the District of Arizona on four counts of Armed Bank Robbery in violation of 18 U.S.C. § 2113(d) and on one count of Use of a Weapon During a Crime of Violence in violation of 18 U.S.C. § 924(c).  The offenses were committed in November and December 1985 and January 1986.  On January 26, 1987, Applicant was sentenced to an aggregate term of 105 years pursuant to 18 U.S.C. § 4205(a).  Applicant is currently in the custody of the United States Bureau of Prisons ("BOP") at the United States Penitentiary ("USP") in Coleman, Florida, although at the time of the filing of this application, he was imprisoned at USP Florence, Colorado.[2]

According to Applicant's presentence report, at the time he committed the robberies, he was on escape status from Western State Hospital in Washington.  Applicant had been committed to the state hospital after pleading guilty to four counts of rape and one count of assault.  He was sentenced to a life term on each count, but the sentences were

_____

[2] Although not presently incarcerated within the Court's jurisdiction, Applicant's subsequent transfer to another jurisdiction does not defeat this Court's authority to issue a judgment.  *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by transfer of the petitioner and the accompanying custodial change.")

suspended because the petitioner was found to be a sexual psychopath.

While incarcerated in the BOP, Applicant applied for parole.  Prior to the parole hearing, a Parole Commission hearing examiner prepared a prehearing assessment.  The parole guidelines, established by the Parole Commission, indicated that Applicant's base parole guideline range was 78–110 months.  Upon review of Applicant's criminal history, which included a 1986 escape from federal custody after arrest for his federal crimes, an assault on two police officers during the escape, and his institutional record, which included two disciplinary infractions for a 1992 escape and fighting while in federal custody, the examiner applied the Parole Commission's rescission guidelines to the base range, which increased Applicant's estimated aggregate guidelines range to 146-212 months.

A parole hearing was held on March 15, 2000.  The hearing examiner determined that Applicant's aggregate parole guideline range was 146-212 months.  The examiner continued the case for a fifteen-year reconsideration hearing in March 2015.  Applicant was advised of the decision by a Notice of Action dated April 23, 2000.

Applicant appealed the decision to the National Appeals Board.  The National Appeals Board affirmed the hearing examiner's decision, but modified the aggregate parole guideline range to 146-208 months based on a mistake in the calculation of the rescission guidelines.

Applicant received a statutory interim hearing on March 2, 2003.  The hearing examiner recommended no change in the previous decision to continue Applicant to a

3

fifteen-year reconsideration hearing.  The Parole Commission concurred with the hearing examiner's recommendation.  Applicant was advised of the decision by a Notice of Action dated April 7, 2003.

Applicant appealed to the Commission's National Appeals Board and contended, among other things, that the Commission should not have applied the rescission guidelines to his escape and assault conduct.  He also requested an advance on his release date based on superior program achievement.  The National Appeals Board affirmed the prior decision.

In April 2003, Applicant filed an application for writ of habeas corpus, Civil Action No. 03-WM-668 (BNB).[3]  Applicant's primary claim was that he was entitled to a parole release date within his guidelines range pursuant to 28 U.S.C. § 235(b)(3).  In an order dated March 1, 2004, the district court agreed.  However, on appeal, that decision was vacated and remanded for dismissal, *Sterling v. Hood*, 120 Fed. Appx. 278 (10th Cir. 2005) (unpublished decision).  Applicant's April 2003 application also sought relief regarding the Commission's application of the rescission guidelines under 28 C.F.R. § 2.36(a).  This claim was denied and not appealed.  Portions of Applicant's Claim IV seem to revive both issues in the present application.

During the pendency of the appeal, the Commission set a parole effective date within Applicant's guidelines range, and set his parole eligibility date at June 13, 2003.

------

[3] Applicant also filed an earlier habeas application, Civil Action No. 00-Z-2480 (BNB), which was dismissed without prejudice.

Upon actual release from his concurrent sentences, Applicant would remain in custody to serve his five-year, nonparolable concurrent sentence pursuant to 18 U.S.C. § 924(c).

Applicant appealed this determination to the Commission's National Appeals Board. He alleged that the Commission misapplied the rescission guidelines under 28 C.F.R. § 2.36 for his escape conduct and his 1986 assault on two police officers. He also asserted that he was entitled to an award for superior program achievement.

The National Appeals Board considered Applicant's arguments. While it agreed an error in his rescission guidelines calculation had been made, it held that error was actually made in Applicant's favor. The Board found that Applicant's escape and assault conduct should have resulted in a higher guideline calculation. Because its decision would result in Applicant receiving a harsher rescission guideline calculation, the Board decided not to amend the Commission's decision.

On May 19, 2004, Applicant filed the current action. The application raises four claims.

Claim I    The BOP's arbitrary revocation of 70 days of "earned and vested Extra Good Time (EGT) – Meritorious Good Time (MGT)" is a violation of the BOP's regulations and deprives Applicant of due process.

Claim II    The BOP's illegal execution of Applicant's federal sentence is in violation of the sentencing court's oral ruling and deprives Applicant of his constitutional rights.

Claim III    The BOP's decision to recalculate how Applicant's five-year nonparolable offense would be served is a violation of the Applicant's constitutional rights, specifically depriving Applicant of due process and equal protection and in violation of the Double Jeopardy and Ex Post Facto clauses.

Claim IV    The Sentencing Commission's calculation of Applicant's parole eligibility is arbitrary and capricious and deprives Applicant of due process of law.

## II.    Preliminary Matters

### A.  Applicant's Status

The petitioner is proceeding *pro se*. Therefore, the Court must construe the application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).

### B.  Successive Claims and Abuse of Writ

As a threshold matter, Respondents argue that Applicant's petition, and particularly Claim IV, should be "dismissed as a successive petition or on abuse of writ grounds." A court may refuse to entertain a habeas application if "the ground asserted was previously heard and decided." *Sanders v. United States*, 373 U.S. 1, 12 (1963). Moreover, to the extent that Applicant could have raised the issue in an earlier application but did not, his

6

claims may be subject to dismissal.  *See id.* at 18 ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation . . . .").

It is true that Applicant previously adjudicated a 2003 application for writ of habeas corpus containing some of the same claims alleged here.  However, the district court never considered the merits of Applicant's Claims I-III (supplemental Claims V, VI, and IX in Applicant's 2003 application) because they were dismissed without prejudice on Applicant's own motion.  At that time, Applicant moved to dismiss these claims due to physical and mental disabilities that limited his ability to litigate them.  The District Court agreed and granted the motion.  As such, as to Claims I-III, they are neither successive nor can they be characterized as an abuse of writ.

Claim IV, however, challenges the Parole Commission's determination of Applicant's parole eligibility, including its application of the rescission guidelines codified at 28 C.F.R. § 2.36.  Applicant's 2003 application adjudicated several claims regarding the Parole Commission's actions, including whether Applicant was entitled to a release date within the parole guidelines (granted, but later vacated on appeal), whether application of the rescission guidelines, 28 U.S.C. § 2.36,  was proper (denied), and whether the Parole Commission violated the intent of Congress in setting his minimum parole guideline (denied).

In his reply to Respondents' argument, Applicant contends that Claim IV is not successive to any of his prior claims and that he could not have brought his current Claim IV at the time of his 2003 writ because the present claims constitute new violations which

came about after the original application.   However, in the same reply,   "Applicant concedes that claim Four in the instant application challenging the Parole Commission's use of rescission guidelines (28 C.F.R. § 2.36) represents a same-claim previously raised and decided in a prior action; Sterling v. Hood et al., 03-WM-0668 (BNB), claim Two." Applicant's Memorandum of Law, Traverse and Reply at 10.

Claim IV has eight subparts.  Applicant alleges that the Parole Commission erred when setting his parole eligibility when it: (1) double counted particular evidence; (2) improperly considered assault and escape conduct; (3) improperly applied the rescission guidelines by mischaracterizing Applicant's assault conduct; (4) used disputed conduct in its calculation; (5) did not place Applicant at the midpoint of his guidelines range; (6) did not reduce Applicant's time of imprisonment to correct the alleged disparity between his sentence and that of his codefendant; (7) did not credit Applicant's superior program achievement; and (8) did not follow Congressional intent for setting Applicant's release date.

It is difficult to reconcile Claim IV with Applicant's earlier claims, but it appears to this Court (and by Applicant's own concession) that Claims IV.1-4 as they relate to application of the rescission guidelines[4] and IV.8 as it relates to setting a final release date

_____

[4] In its opinion on Applicant's 2003 habeas application, the district court ruled on the merits and denied relief on Applicant's rescission guidelines claim as it related to use of the 1986 escape and assault conduct.  As such, any claim in this application regarding the use of Applicant's escape and assault conduct is successive and should be dismissed.

8

are successive and should not be considered.[5]  Although Applicant asserts that Claim IV involves new claims that were not in existence during his earlier application, he does not explain his basis for this contention.  In fact, although Applicant received a final decision from the Commission's National Appeals Board after his 2003 habeas application concluded, the Board did not raise his guidelines range beyond what it was at the time of his earlier application.  In this Court's judgment, all of the above grievances in Claim IV were in existence at the time of the earlier claim and, therefore, should have been brought (and, indeed, some were) at that time.  *See McClesky v. Zant*, 499 U.S. 467, 489-90 (1991) (holding that where a claim could have been brought in an earlier application, but was not, the abuse-of-writ doctrine is implicated).[6]  Regardless, as will be discussed *infra*, even considering Claim IV on the merits, Applicant is not entitled to relief.

III.    Analysis

   A.  Claim I – Denial of 70 days Extra Good Time (EGT)

   Applicant claims that the BOP revoked 70 days of EGT, which is a violation of the

---

[5] Applicant's Claim IV.8 appears to revive the argument that was the subject of claim one in his 2003 application and was the issue on appeal to the Tenth Circuit. There, although relief had been granted on this claim by the district court, that relief was vacated by the Tenth Circuit.

[6] In addition, Applicant has failed to demonstrate cause or prejudice in relation to asserting aspects of Claim IV that were in existence in 2003, but not pled.  *See McClesky*, 499 U.S. at 494-96; *Thunder v. U.S. Parole Comm'n*, No. 05-1296, slip op. at 4 (10th Cir. Feb. 7, 2006) (unpublished decision).  He does not contend that mental or physical disabilities hindered his ability to plead all of his grievances with his parole eligibility and rescission guidelines calculation.  (He limited this argument to his present Claims I-III, which were dismissed without prejudice in the 2003 application.)

BOP's regulations and deprives Applicant of due process of law.  The district court has authority to review the calculation of credit via § 2241 application after administrative remedies have been exhausted.  *Bennett v. U.S. Parole Comm'n*, 83 F.3d 324, 327 (10th Cir. 1996).  The Court's review of the documents submitted confirm that Applicant has exhausted his administrative remedies, and Respondents make no assertion otherwise.

On June 13, 1990, Applicant was transferred from the Community Corrections Center in Bismark, North Dakota.  He arrived at USP Leavenworth, Kansas on June 22, 1990.  While at the community corrections center, Applicant was eligible for and earned EGT.

As to the merits of the claim, Respondents argue that Applicant was not entitled to earn EGT after he arrived at USP Leavenworth pursuant to 28 C.F.R. § 523.17(e) which reads, in pertinent part:

> An inmate who is transferred remains in the earning status at time of transfer . . . .  Where the receiving institution is a camp, farm, or community corrections center, the extra good time continues automatically upon the inmate's arrival.  Where the receiving institution is other than a camp, farm, or community corrections center, the extra good time is terminated upon arrival, and staff at the receiving institution shall review each case to determine if the inmate should continue in meritorious good time earning status . . . .

Respondents assert that because Applicant was transferred to a prison rather than a community corrections center, camp, or farm, his EGT status was terminated upon arrival, and he was not eligible to continue to earn EGT without reinstatement.  There is no record of reinstatement upon Applicant's arrival at USP Leavenworth.

From a review of the exhibits filed, it appears Applicant earned 23 days of EGT while at the community corrections center, not 93 days as Applicant asserts. Applicant was transferred from the community corrections center on June 13, 1990. Pursuant to section 523.17(e), Applicant was eligible to continue to earn EGT until his arrival at USP Leavenworth, which was on June 22, 1990. In a report dated November 17, 1999, Applicant is credited with earning 23 days of EGT while at the community corrections facility.

Applicant's claim here is premised on an earlier report created on February 17, 1993, which mistakenly lists September 25, 1991 as his arrival date at USP Leavenworth and assesses 70 days of additional EGT presumably using the incorrect date as the end date for accrual status. As such, it appears from this Court's review that from June 22, 1990 to September 25, 1991, Applicant accrued EGT to which he was not entitled. The November 17, 1999 report appears to correct this unauthorized accrual of EGT and also amends the discrepancy in the date of arrival. Because there is no documentation provided by Applicant to indicate that he earned an additional 70 hours of EGT while at the community corrections center or that his EGT status was continued upon his arrival at USP Leavenworth, this Court recommends that Applicant's Claim I be DENIED.

B. Claim II – Execution of Federal Sentence

Applicant claims it was a violation of his constitutional rights to serve his federal sentence first. Applicant asserts that the sentencing court ordered him to serve his federal sentence consecutive to any other imposed sentences. Based on that, he asserts it was

error to require him to serve his federal sentence prior to remanding him into the custody of the State of Washington to serve his state sentence.  The District Court has authority to review a challenge of the execution of a federal sentence.  *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000).  As a preliminary matter, Respondents argue that this claim should be dismissed on grounds of standing, mootness, and for failure to state a claim.

As to standing, Respondents argue that Applicant has not suffered an injury in fact. Respondents assert that even assuming he has alleged an injury, there is no causal connection between the alleged injury and the BOP's conduct, and the alleged injury cannot be remedied by a favorable decision.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (denoting a three-part test to determine standing:  (1) injury in fact; (2) causal connection; and (3) capability of redress).  As Respondents correctly note, while Applicant was convicted of four counts of rape and one count of assault in the State of Washington, his  sentence was suspended given Applicant's mental state, and he was transferred to a state mental hospital.  Thereafter, he escaped and committed the armed robberies for which he is presently incarcerated.  The State of Washington has never executed his sentence, and it remains suspended.  As such, the sentencing court's direction has no application.

Further, even if Applicant can be said to have suffered an injury, it is caused by the State of Washington and its decision not to execute Applicant's sentence.  As such there is no causal connection to any conduct of the BOP and Applicant's alleged injury.  *See generally Montez*, 208 F.2d at 865-66 (holding that grievances against a state are not

12

cognizable in federal court).  Finally, even if Applicant can withstand the first two hurdles of the standing doctrine, this Court cannot remedy his injury.  Under the principles of comity, a federal court does not have jurisdiction to require the State of Washington to execute Applicant's sentence so that he may serve his state sentence prior to his federal sentence.  *See generally Engle v. Isaac*, 456 U.S. 107, 128 (1982) (noting that federal intrusions on state criminal issues frustrates the States' sovereign power).  Because the Court concludes Applicant has no standing to bring this claim, it is unnecessary to address Respondents' other arguments regarding its alleged defects.

C. Claim III – Recalculation of Consecutive Sentence

Applicant claims that the BOP's allocation of his nonparolable sentence to begin after the completion of his parolable sentences is a violation of his due process and equal protection rights and violates the Double Jeopardy and Ex Post Facto Clauses of the Constitution.  After Applicant began serving his five federal sentences, in April 1999, the BOP changed the order in which he was to serve his five-year, consecutive, nonparolable offense under 18 U.S.C. § 924(c).  It did so pursuant to *United States v. Gonzales*, 520 U.S. 1 (1997), which called into question the BOP's prior method of allocating sentences that included a nonparolable, consecutive sentence.  Prior to *Gonzales*, the BOP had been allocating sentences under § 924(c) to be served first.  After *Gonzales*, the BOP reset the order of Applicant's sentences to require that Applicant serve his § 924(c) sentence after his other sentences.

This Court finds *United States v. Gonzales* to be dispositive on this issue.  There,

13

the Supreme Court held that under the clear meaning of 18 U.S.C. § 924(c), an inmate serving a § 924(c) sentence was not entitled to serve that portion of his sentence first. Therefore, "[w]hen a defendant violates § 924(c), his sentencing enhancement under that statute must run consecutively to all other prison terms." *Id.* at 9-10. The BOP was not required to run Applicant's nonparolable sentence first, as it had mistakenly determined. *Id.* at 8-10. Under that mistaken scenario, the Court recognized that longer sentences could result. *See id.* at 7.

The BOP's revision of the order in which Applicant was to serve his parolable and nonparolable sentences is supported by the plain meaning of the statute. The initial five years of Applicant's incarceration has now been credited against his concurrent sentences. Moreover, Applicant has failed to show that the recalculation created a longer sentence.[7] The Court finds that Applicant was not injured by this recalculation and is not entitled to relief for this claim. Such was the same holding in *Harris v. Hurley*, where the petitioner made similar unsuccessful arguments about the post-*Gonzales* recalculation of his sentences. *Harris v. Hurley*, 210 F.3d 389 (Table) (10th Cir. 2000) (unpublished decision) (noting also that delay in parole hearing without extension of overall time of imprisonment does not create an injury).

D. Claim IV – Parole Eligibility

As noted earlier, the Court concludes that Claim IV should be dismissed as

---

[7] Applicant does claim that the recalculation extended his time in prison by 44 months, but the basis for this contention is unclear.

14

successive or an abuse of writ.  However, given Applicant's *pro se* status, the Court will discuss the legal merits of this claim and make a recommendation.  Here, Applicant challenges a decision by the Parole Commission.  A decision by the Parole Commission will only be overturned if the Applicant establishes that the decision was arbitrary and capricious or an abuse of discretion.  *Fiumara v. O'Brien*, 889 F.2d 254, 257-58 (10th Cir. 1989).

As to Claim IV.1-4, Applicant contends that the Parole Commission acted arbitrarily by double counting his 1986 assault in both his salient factor score and the rescission guidelines (IV.1); by counting the 1986 escape and assault evidence in the rescission guidelines calculation and by increasing the parole guidelines range for his two escapes (IV.2); by labeling the 1987 assault conviction as a category six offense when it caused no serious bodily injury (IV.3); and by using "disputed" evidence of the 1986 assault (IV.4).

This Court finds no merit to the contention that Applicant is entitled to relief due to the Parole Commission's consideration of Applicant's 1986 assault in his salient factor score and rescission guidelines.  Applicant's conviction for the 1986 assault is both an aggravating circumstance under the salient factor assessment and new criminal conduct during period of confinement under the rescission guidelines.  Further, the Court determines that it was within the Commission's discretion to consider all evidence of Applicant's escapes (one during his federal custody, but prior to sentence, and one after his federal sentence) and his 1986 assault when calculating Applicant's rescission

guidelines.[8]   Moreover, in Applicant's 2003 habeas application, the district court considered this argument and found it to have no merit.

This Court also finds that the Parole Commission acted within its authority by categorizing Applicant's 1986 assault as a category six offense.   Applicant struck two police officers on the head with a wooden board. 28 C.F.R. § 2.20 n.212(b) & (d) indicates that an offense with a dangerous weapon on a law enforcement officer is graded as a category six offense.   Because Applicant used a dangerous weapon and the victims were law enforcement officers, this Court finds the Commission acted reasonably in assessing a category six label.   Contrary to Applicant's claim, serious bodily injury is not a requirement for a category six rating.   In addition, Applicant's assertion that it is disputed that he committed the 1986 assault is belied by his conviction for that offense, and the Commission properly considered it.   A challenge of the validity of Applicant's conviction is not properly brought in a § 2241 action.   *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996).   Therefore, Claim IV.1-4 must be denied.

As to Claim IV.5, Applicant claims it was error to set a release date at the top of his parole guidelines.   While the Commission's internal manual specifies that in the normal

_____

[8] Applicant also appears to argue that his 1986 escape conduct should not count in the calculation because there was no administrative hearing and no disciplinary infraction assessed.   He does concede that there was a disciplinary infraction assessed for his 1992 escape.   First, evidence of Applicant's 1986 escape is well documented and without dispute.   Second, the rescission guidelines apply equally to disciplinary infractions and new criminal conduct.   The 1986 escape constitutes new criminal conduct committed during a period of confinement before sentence is imposed.   *See* 28 C.F.R. § 2.36(a).

16

case, the release date will be placed in the lower half of a the guidelines range, this is left to the discretion of Commission and may be adjusted for adverse circumstances such as the degree of severity of an inmate's crimes.  This Court finds that it is without jurisdiction to review claimed departures from the Commission's manual.  *See, .e.g, United States v. Thompson*, 579 F.2d 1184, 1189 (10th Cir. 1978); *Caporale v. Gasele*, 940 F.2d 305, 306-07 (8th Cir. 1991); *Coleman v. Perrill*, 845 F.2d 876, 879 (9th Cir. 1988).  Even if that were not the case, the decision of the Commission was within its discretion and fully supported by Applicant's prior criminal conduct.  Accordingly, Claim IV.5 must be denied.

As to Claim IV.6, Applicant claims the Parole Commission acted arbitrarily by giving him a sentence more adverse than that of his codefendant.  To the extent that Applicant is challenging the legality of his sentence, only the sentencing court has jurisdiction to hear that claim.  *See Bradshaw*, 86 F.3d at 166.  To the extent that Applicant is challenging his parole eligibility, Applicant is not constitutionally entitled to receive a sentence similar to that of his codefendant.  *See Randall v. United States*, 324 F.2d 726, 727 (10th Cir. 1963).  Claim IV.6 is therefore denied.

As to Claim IV.7, Applicant claims that the Parole Commission acted arbitrarily by failing to give him credit toward his parole eligibility date for superior program achievement.  The use of superior program achievement is governed by 28 C.F.R. § 2.60(a), which states:  "Prisoners who demonstrate superior program achievement (in addition to a good conduct record) *may* be considered for a limited advancement of the presumptive date previously set . . ." (emphasis added).  The decision to award a credit

17

for superior program achievement is solely within the discretion of the Parole Commission. *Otsuki v. U.S. Parole Comm'n*, 777 F.2d 585, 587 (10th Cir. 1985).  A review of the record indicates the Commission did consider whether a credit for superior program achievement was warranted and weighed the seriousness of Applicant's offenses against other mitigating factors.  This Court finds that such a determination was reasonable and within the Commission's discretion.  As such, Claim IV.7 is denied.

As to Claim IV.8, Applicant argues that the Parole Commission acted arbitrarily  by not setting a release date that coincides with his parole eligibility date, in violation of the original version of section 235(b)(3) of the Sentencing Reform Act, Pub. L. No. 98-473, § 235(b)(3), 98 Stat. 1837, 2032 (1984).  Applicant also challenged the application of this section in his 2003 habeas application, which was the issue on appeal.  As a preliminary matter, in addition to this being a successive claim, at the time of the filing of this petition, the Tenth Circuit had not yet resolved the issue from Applicant's 2003 application. Therefore, it was not ripe for this Court's determination.

Even if it can now be said that the claim is ripe, the Tenth Circuit ruled that the right to challenge the setting of Applicant's release date had not vested because Applicant had no right to an immediate setting of his release date, but only to have the release date set sufficiently before the Commission's expiration date. *Sterling v. Hood*, 120 Fed. Appx. 278, 279-80 (10th Cir. 2005).  According to *Bledsoe v. United States*, 384 F.3d 1232, 1236 (10th Cir. 2004), Congress extended the life of the Commission, and it was not set to expire until October 31, 2005.  As such, at the time of the filing of the present application,

18

Applicant did not have a vested right to challenge this issue.  Regardless, Applicant is not constitutionally entitled to have a release date that coincides with his parole eligibility date.[9]

IV.    Conclusion

In reviewing the merits of Applicant's claims, he is not entitled to relief under 28 U.S.C. § 2241.  No evidentiary hearing is required.  Accordingly, for the reasons stated above, the Court RECOMMENDS that the Application for a Writ of Habeas Corpus pursuant to 18 U.S.C. § 2241 be **denied** and that this case be dismissed with prejudice. Under Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.

A party's failure to serve and file specific, written objections waives *de novo* review

---

[9] In Applicant's Request to Supplement Petition [Docket No. 44, Filed March 8, 2007], which was never ruled upon and has not been referred to this Court, Applicant requests permission to add an additional claim that the Parole Commission erred by delaying parole based on Applicant's mental health and need for treatment.  This claim was in existence at the time of, and alleged in, Applicant's 2000 habeas application. Although that petition was dismissed without prejudice, Applicant was required under the statue of limitations to reallege this claim within one year.  *See Oliver v. Ortiz*, 146 Fed. Appx. 319, 321-22 (10th Cir. 2005) (unpublished decision).  Even assuming there is no statute of limitations issue, this claim was also in existence at the time of Applicant's 2003 habeas application and should be denied as an abuse of writ.  A new decision by the Commission reaffirming prior decisions about Applicant's parole eligibility does not create a new controversy.  *See, e.g.*, *Ortloff v. Fleming*, 2003 WL 21246098, at *8 (N.D. Tex. Apr. 24, 2003) (unpublished decision) (citing *Sanders*, 373 U.S. at 16) (noting that a challenge of the most recent Commission decision which does not amend a prior final decision that was previously adjudicated via § 2241 petition is actually a challenge of the prior final decision).

of the recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S.

140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91

F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must

be both timely and specific to preserve an issue for *de novo* review by the district court or

for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th

Cir. 1996).


Dated:  September 18, 2007

                                                    BY THE COURT:

                                                     s/ Kristen L. Mix
                                                    U.S. Magistrate Judge
                                                    Kristen L. Mix